# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Salado and Sons Transport, LLC,

Plaintiff,

    vs.                          **COMPLAINT**

IMG Trucking, Inc.,

Defendant.

## COMPLAINT AND JURY DEMAND

Now comes Plaintiff, Salado & Sons Transport, LLC., by and through counsel, and for its Complaint against Defendant, states as follows:

## PARTIES AND JURISDICTION

1. At all times relevant hereto, Plaintiff, Salado & Sons Transport, LLC, has been doing business at 120 Pottok Lane, Shakopee, MN 55519, and has been a citizen of the state of Minnesota and the United States of America.

2. On information and belief, Defendant, IMG Trucking, Inc. (hereinafter "Defendant "IMG"), is a transportation company engaged in interstate commerce, authorized by the Federal Motor Carrier Safety Administration ("FMCSA") to

transport goods throughout the 48 contiguous United States, with its principal place of business in the State of Illinois.

3.     The Court enjoys subject matter Jurisdiction over the claims asserted by reason of the diversity of the citizenship of the paties pursuant to 28 U.S.C. § 1332(a); and the federal issue involved pursuant to 28 U.S.C. § 1441(a) .

4.     This Court enjoys personal jurisdication over the parties pursaunt to 49 U.S.C. § 14704(d) because the Plaintiff resides in this judicial district.

## FACTS RELEVANT TO ALL CLAIMS

5. On September 5, 2017, Plaintiff and Defendant enetered into a Transportation Equipment Lease and Service Agreement ("Agreement") in which Plaintiff leased a 2012 FRTH Tractor to Defendant and agreed to provide drivers for the operation of the 2012 FRTH Tractor to transport cargo assigned by Defendant.

6.   For every load assigned by Defendant and delivered by Plaintiff, Plaintiff will be paid 90% of the gross amount of the load within 15 days after submission of the necessary delivery documents and paper work to Defendant and Defendant will keep 10% .

7.   The Agreement also stipulates that Defendant will withhold $500 from Plaintiff's payment and place interest free in a reserve account. The "reserve" will be released upon the occurrence of certain events.

8. The Agreement contained a "Charge Back" provision which allows the Defendant to deduct from amounts owed the Plaintiff upon the occurrence of certain events, including loss or damage to cargo; losses inccured as a result of Plaintiff's conduct; and deductible amounts on claims against liability and cargo insurance.

9. Under the Agreement, Defendant is mandated to provide Plaintiff with a written explanation and itemization of any deducations for cargo or property damage before the deduction is made.

10. Defendant obtained and maintained cargo insurance as required by the Agreement and provided Plaintiff a copy of the certification of insurance. The cost of the insurance was deducted by Defendant from the amount due Plaintiff.

11. The insurance coverage obtained by Defendant and provided to Plaintiff provides for a $2,500 deductible when there is a claim made for loss or damage to the cargo.

12. On or about December 27, 2017, Plaintiff was assigned to pick up two loads from San Juan Bautista and Gonzales in California bound for delivery in Fargo, North Dakota and Saint Cloud, Minnesota by January 5, 2018.

13. On December 27, 2017, Plaintiff picked up the San Juan Bautista load and on December 28, 2017 he picked up the Gonzales load. Plaintiff was instructed to keep the cargo at a temperature of 33-34 degrees.

14. On New Year day, January 1, 2017, while driving through Little America, Wyoming, the breaking system air compressor on Plaintiff's truck failed. Plaintiff immediately communicated the problem to Defendant's dispatcher.

15. Because of the holiday, it took Plaintiff two days to order parts and repair his truck. During this time the refrigeration unit on the trailer was running and the temperature was set at 33-34 degrees. On January 3, 2018, Plaintiff left Little America, Wyoming en route to North Dakota and Minnesota.

16. Since the cargo was not going to be delivered in North Dakota and Minnesota by the Jaunary 5, 2018 delivery date, Plaintiff was re-routed to deliver part of the cargo in Omaha, Nebraska and the rest in Chicago Illinios.

17. At delivery in Omaha, all of the cargo was accepted except three boxes which had expiration date concerns. In Chicago the remainder of the load was accepted at delivery including the three boxes that were not accepted in Omaha. In Chicago it was noted in the bill of lading that the cargo was received under protest.

18. Plaintiff sent all of the paper work including the bill of delivery to Defendant's accounting department as required under the agreement. On or about Janaury 19, 2018, Defendant paid Plaintiff $6,127.49 for the two loads that were delivered in Omaha and Chicago.

19. Sometime in February 2018, Plaintiff received formal notice that a cargo claim had been filed because his truck was late to deliver its cargo to Saint Cloud, Minnesota.

20. Following the receipt of the formal complaint, Plaintiff called Defendant's dispatcher and Safety and Claims Department and inquired about the claim. Plaintiff was told there was freezer damage in the claim and he was asked to provider a reefer report.

21. Plaintiff obtained a reefer report of the refrigerating system on his trailer for the relevant time that he had the load and provided it to Defendant.

22. On or about February 16, 2018, Defendant deducted $2,500 for "insurance deductible- Cargo" from amounts due to Plaintiff. On March 16, 2018 $1,500 was deducted from Plaintiff's account; and on March 22, 2018 $1,340.88 and $1,500 were deducted from amounts due to Plaintiff for a total of $6,840.88.

23. On or about March 23, 2018, Plaintiff wrote to Defendant's principal, Irena disputing the fact that the load had a freezer damage and indicating that the claim filed was for the lateness of the cargo. Plaintiff also demanded that he be provided information on the claim that was filed with the insurance company and that the $6,840.88 that was deducted from his account be refunded to him.

24.     Plaintiff also informed Irena that he was not allowed to continue working under the contract even though he has pre-paid the registraion and continues to pay his insurance premiums.

25. Irena responded that Plaintiff still owes Defendant money as there was still a shortage on the $7,500 to charge back the load. She indicated that Defendant was not paid for the cargo because Plaintiff was in default.

26.     On March 30, 2018, Plaintiff filed suit in Concilaition Court. On May 29, 2018, Defendant responded to the suit and asserted counterclaims of its own. On July 18, 2018, the Concilaition Court entered judgment for the Plaintiff. On July 25, 2018, Defendant appealed to the Scott County District Court. On January 16, 2019, Plaintiff removed the case to this Court.

## COUNT I

## VIOLATIONS OF THE TRUTH IN LEASING REGULATIONS BY DEFENDANT

27. Plaintiff reiterates, realleges, and incorporates herein by reference each and every allegation contained in paragraphs 1-26.

28.     Under federal law, an "authorized carrier may perform authorized transportation in equipment it does not own only under the following conditions: there shall be a written lease granting the use of the equipment and meeting the requirements contained in 49 C.F.R. § 376.12." (49 C.F.R. § 376.11(b)). Defendant

is engaged in the unlawful provision of transportation services in equipment it does not own because the lease governing the use of such equipment fail to conform to 49 C.F.R. Pt. 376:

29.     Defendant's Agreement with Plaintiff does not contain certain provisions required by 49 C.F.R. § 376.12. By way of illustration and not limitation:

(1) Defendant's Agreement does not recite an unqualified obligation to provide Plaintiff with documentation to substantiate charge-backs as required by 49 C.F.R. § 376.12(h).

(2) Defendant's Agreement does not specify that when deductions for cargo and property damage are made from Plaintiff's account, a written explanation and itemization of those deductions will be given to Plaintiff before the deductions are made as required by 49 C.F.R. § 376.12(j)(3).

30.     Defendant's Agreement contains provisions that conflict with 49 C.F.R. § 376.12. By way of illustration and not limitation,

(1) Defendant's Agreement, contrary to 49 C.F.R. § 376.12(g), does not require Defendant to provide Plaintiff with copies of freight bills or other forms of freight documents to establish the accuracy of Plaintiff's payments.

(2) Defendant's Agreement, contrary to the provisions of 49 C.F.R. § 376.12(j)(1), does not specify the amount Plaintiff would be charged for insurance premiums, thereby facilitating the sale of insurance at unreasonable and excessive premiums.

(3) Defendant's Agreement, contrary to the provisions of 49 C.F.R. § 376.12(k)(5), avoids paying interest on Reserve Funds on a quarterly basis as required by law.

31. As a direct and proximate result of these violations of federal law, the rights of Plaintiff have been violated and Plaintiff has suffered financial injury in an amount exceeding $50,000.

## COUNT II

## **FRAUD**

32. Plaintiff reiterates, realleges, and incorporates herein by reference each and every allegation contained in paragraphs 1-31 inclusive.

33. Article 9, Section 9.3(b) of the Agreement requires that Defendant purchase and maitain cargo insurance covering all loss or damage to any cargo at Plaintiff's cost.

34. Defendant obtained cargo damage insurance for the Plaintiff and provided Plaintiff with the Certificate of Liability Insurance.

35. The Insurance Certificate and Article 6, Section 6.4(f)(ii) of the Agreement provided that for damage to the cargo, Plaintiff will pay a deductible of $2,500.

36. Plaintiff carried the insurance certificate in his truck and paid his premiums on time. There was no other cargo insurance arrangement between the parties.

37. On February 7, 2018, Plaintiff was notified of claim for late delivery of products that were rejected. $2,500 was deducted from Plaintiff's account for the deductible as stipulate in the insurance certificate and Agreement.

38. On March 16, 2018 $1,500 was deducted from Plaintiff's account; and on March 22, 2018 $1,340.88 and $1,500 were deducted from amounts due to Plaintiff for a total of $6,840.88.

39. Plaintiff questioned why additional withdrawals were made from his account, Plaintiff was informed by Defendant's agent that the products were rejected because of freezer damage and a $7,500 deductible was required.

40. Defendant presented Plaintiff with a copy of Certificate of Liability Insurance requiring $7,500 deductible for refrigerator losses related to driver error.

41. Plaintiff has never seen this Certificate before. A copy was never given to Plaintiff to keep in the truck as required by law and Plaintiff did not pay premiums for such a coveage.

42. Defendant knew that the claim that was filed and was for rejection of the product due to late truck but represented that the claim was for refrigerator loss due to driver error.

43. Defendant knew that the deductible for cargo damage per the insurance certificate and Agreement it has with Plaintiff was $2,500 but presented a

Certificate of Liability Insurance it knew it did not have with Plaintiff to justify a $7,500 deductible deduction from Plaintiff's account.

44. Defendant did this with the intention to induce Plaintiff to pay $7,500 deductible for the claim.

45. The actions of Defendant caused Plaintiff to suffer damage and Plaintiff is entitle to judgment in an amount in excess of $7,500.

## COUNT III

## **BREACH OF TRANSPORTATION CONTRACT**

46. Plaintiff reiterates, realleges, and incorporates herein by reference each and every allegation contained in paragraphs 1-45 inclusive.

47. Plaintiff entered into an Agreement with Defendant and performed all the obligations required of it including obtaining and maintaining insurance; pre-paying for registration and providing driver services.

48. Defendant failed to provide Plaintiff with a written explanation and itemization of deductions for cargo damage made from money owed the Plaintiff and Plaintiff has suffered damage.

49. Defendant refused to allow Plaintiff to continue working under the Agreement.

50, Plaintiff suffered loss of income and damages in excess of $25,000.

## COUNT IV

## **UNJUST ENRICHMENT**

51. Plaintiff reiterates, realleges, and incorporates herein by reference each and every allegation contained in paragraphs 1-50 inclusive.

52. Defendant procured cargo insurance for Plaintiff for which Plaintiff paid premiums on the understanding that Plaiintiff will pay a deductible of $2,500 if there is a claim.

53. At the time of the Agreement Plaintiff had a reasonable expectation of paying $2,500 as deductible.

54. Defendant has conferred a benefit to itself by deducting more than $2,500 from Plaintiff's account. If Defendant is allow to retain the benefit it conferred on itself, Defendant will be unjustly enriched.

55. Notwithstanding repeated demands from Plaintiff for Defendant to refund what it has deducted from its account above $2,500, Defendant has refused.

56. As a result of Defendant's actions, Plaintiff is entitled to judgment in an amount exceeding $7,500.

## COUNT V

## ATTORNEY FEES

57. Plaintiff reiterates, realleges, and incorporates herein by reference each and every allegation contained in paragraphs 1-56 inclusive.

58. As a result of Defendant's breach of the contract of carriage, under 49 U.S.C.A. § 14706, and Defendant's violations of the federal claim regulations at 49 C.F.R. Pt. 370, plaintiff is entitled to an award of reasonable attorney's fees under 49 U.S.C.A. § 14704(e).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands:

1. Judgment against Defendant.
2. Interest on the judgment at the lawful rate from the date of entry of judgment until paid.
3. An award of reasonable attorney fees as authorized by statute.
4. Plaintiff's costs and disbursements in this action; and
5. For such other and further relief as the Court may deem just and proper in this matter.

January 16, 2019                                                 Fondungallah & Kigham, LLC


<u>sMichael Fondungallah</u>
Michael Fondungallah #310748
2499 Rice Street Suite 145
Saint Paul, MN 55113
Tel (651) 482-0520
Fax (651) 482-0530
[mfondungallah@fondlaw.com](mailto:mfondungallah@fondlaw.com)
Attorneys for Plaintiff Salado & Sons Transport, LLC.
